## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

LOUIS P. PETERSON, as Executor ⟩
of the Estate of JUANITA E. PETERSON, Deceased ⟩
⟩
      **Plaintiff,** ⟩      *149*
⟩
**vs.** ⟩    No. 13-L- *149*
⟩
COVENANT CARE MIDWEST, INC. doing business ⟩
as CEDAR RIDGE HEALTH AND REHAB CARE ⟩     **FILED**
CENTER, ⟩    ST. CLAIR COUNTY
⟩      **MAR 2 0 2013**
      **Defendant.** ⟩
                           *CIRCUIT CLERK*

### COMPLAINT AT LAW

### COUNT I-SURVIVAL, STATUTORY ACTION NURSING HOME CARE ACT

        NOW COMES the Plaintiff, LOUIS P. PETERSON, as Executor of the Estate of

JUANITA E. PETERSON, Deceased, by and through his attorneys, STRELLIS &

FIELD, CHARTERED, and for his cause of action against the Defendant, COVENANT

CARE MIDWEST, INC., doing business as CEDAR RIDGE HEALTH AND REHAB

CARE CENTER, as their interests appear, states as follows:

        1.     Plaintiff's Decedent, Juanita E. Peterson, was a resident of Cedar Ridge

Health and Rehab Care Center located at 1 Perryman Street, Lebanon, IL  62254 from

March 27, 2011 through May 3, 2011.

        2.     Plaintiff is the duly appointed, qualified and acting Executor of the Estate

of JUANITA E. PETERSON, Deceased, pursuant to Letters of Office issued to Louis P.

Peterson on August 5, 2011 issued in the Circuit Court of St. Clair County, Illinois.

        3.     On or about May 15, 2011, Juanita E. Peterson died.

scan 03/22/2013

4.     At all times relevant herein, defendant, Covenant Care Midwest, Inc., was a corporation which operated a long-term nursing care facility known as Cedar Ridge Health and Rehab Center and held itself out to the public as a long-term nursing and rehabilitation center which provides nursing care for aging persons and persons requiring full-time nursing care.

5.     At all times relevant herein, there was in full force and effect the statute known as "The Nursing Home Care Act", as amended ("The Act"), 210 ILCS 45/1-101 et., seq. and the facility operated by the defendant was a "facility" as defined by 45/1-113 of The Act and was subject to the requirements of The Act and the regulations of the Illinois Department of Public Health promulgated pursuant to The Act.

6.     At all times relevant herein, the facility received payment from Medicare to provide nursing home care, treatment and related services, and was subject to the requirements of the 45 USCA, Section 1396(r) (1990 et. seq.) as amended by the Omnibus Budget Reconciliation Act of 1987 (OBRA) and Volume 42, Code of Federal Regulations, Part 482, setting forth Medicare and Medicaid requirements for the long-term nursing care facilities ("OBRA Regulations"), as effective on October 1, 1990.

7.     At all times relevant herein, the facility operated by the defendant, was a "nursing facility" as defined by the 42 USCA, Section 1396(f).

8.     Throughout the time Juanita E. Peterson was a resident of the facility, defendant, Covenant Care Midwest, Inc. d/b/a Cedar Ridge Health and Rehab Center, was the licensee of the facility.

9.     The defendant, as a nursing facility, by and through its agents, servants, and employees, had a duty not to violate the rights of any resident of the facility

2

including the duty not to neglect any resident as provided by 210 ILCS 45/2-107 and 210 ILCS 45/1-117.

      10.    Notwithstanding the aforementioned duty, the defendant, as a nursing facility, by and through its agents, servants, and employees, and continuously during the period of time on and before May 3, 2011, violated The Act in that the defendant:

      a.    In violation of 77 Ill. Admin Code, Chapter 1, Section 300.1210(a) failed to provide adequate and properly supervised care as needed by Juanita E. Peterson.

      b.    In violation of 77 Ill. Admin. Code, Chapter I, Section 300.3240, failed to protect Juanita E. Peterson from neglect;

      c.    Failed to develop and implement an appropriate care plan for the medical needs of Juanita E. Peterson;

      d.    Failed to adequately monitor and treat the plaintiff's decedent, Juanita E. Peterson for severe hypoglycemia, aspiration pneumonia, dehydration and severe malnutrition; and

      e.    Failed to provide adequate medical care to Juanita E. Peterson.

      11.    As a direct and proximate result of one or more of the foregoing violations of the Act, Plaintiff's Decedent, Juanita E. Peterson, thereby sustained damages of a personal, permanent and pecuniary nature, including but not limited to the incurrence of expenses and treatment, pain and suffering, disability, and loss of normal life.

      12.    Such pain, suffering, disability, loss of normal life and incurred expenses lasted until the Decedent's death on May 15, 2011.

scan 03/22/2013

13.     Under Section 3-601 of the Act, Defendant, are liable to Juanita E. Peterson for the negligent acts and omissions of their agents or employees that injured her.

WHEREFORE, Plaintiff, LOUIS P. PETERSON, as Executor for the ESTATE OF JUANITA E. PETERSON, Deceased, prays that this court enter a judgment in his favor and against the Defendant, COVENANT CARE MIDWEST, INC., d/b/a CEDAR RIDGE HEALTH AND REHAB CENTER, for an amount in excess of $50,000.00 that will fairly and justly compensate him for damages his Decedent sustained, plus costs and attorney's fees, pursuant to 210 ILCS 45/3-602.

## COUNT II-SURVIVAL, NEGLIGENCE

NOW COMES the Plaintiff, LOUIS P. PETERSON, as Executor for the ESTATE OF JUANITA E. PETERSON, Deceased, by and through his attorneys, STRELLIS & FIELD, CHARTERED, and for his cause of action against the Defendant, COVENANT CARE MIDWEST, INC., d/b/a CEDAR RIDGE HEALTH AND REHAB CENTER, states as follows:

1.     Plaintiff's Decedent, Juanita E. Peterson, was a resident of Cedar Ridge Health and Rehab Center, at its facility located in Lebanon, St. Clair County, Illinois from March 27, 2011 through May 3, 2011.

2.     Plaintiff is the duly appointed, qualified, and acting Executor of the Estate of Juanita E. Peterson, Deceased, pursuant to an order entered and letters of administration issued in the Circuit Court of St. Clair County, Illinois.  Plaintiff alleges this count under the common law of negligence and under the Survival Act (755 ILCS 5/27-6).

4

3.    At all times relevant herein, defendant, Covenant Care Midwest, Inc., was a corporation which operated a long-term nursing care facility known as Cedar Ridge Health and Rehab Center and held itself out to the public as a long-term nursing and rehabilitation center which provides nursing care for aging persons and persons requiring full-time nursing care.

4.    At all times mentioned herein Defendant owed Plaintiff's Decedent, Juanita E. Peterson, a duty to exercise ordinary and/or extraordinary care at all times for Decedent's safety.

5.    On, before and subsequent to May 3, 2011, Defendant, breached said duty when it, or one or more of their employees, were careless and negligent in one or more of the following manners:

a.    Failed to develop and implement an appropriate care plan for the medical needs of Juanita E. Peterson;

b.    Failed to adequately monitor and treat the plaintiff's decedent, Juanita E. Peterson for severe hypoglycemia, aspiration pneumonia, dehydration and severe malnutrition; and

c.    Failed to provide adequate medical care to Juanita E. Peterson.

6.    As a direct and proximate result of one or more of the foregoing violations of the Act, Plaintiff's Decedent, Juanita E. Peterson, thereby sustained damages of a personal, permanent and pecuniary nature, including but not limited to the incurrence of medical expenses and treatment, pain and suffering, disability, and loss of normal life.

7.    Such pain, suffering, disability, loss of normal life and incurred expenses lasted until the Decedent's death on May 15, 2011.

WHEREFORE, Plaintiff, LOUIS P. PETERSON, as Executor for the ESTATE OF JUANITA E. PETERSON, Deceased, prays that this court enter a judgment in his favor and against the Defendant, COVENANT CARE MIDWEST, INC., d/b/a CEDAR RIDGE HEALTH AND REHAB CENTER, for an amount in excess of $50,000.00 plus costs of suit.

## COUNT III-WRONGFUL DEATH, STATUTORY ACTION NURSING HOME CARE ACT

NOW COMES Plaintiff, LOUIS P. PETERSON, as Executor of the Estate of JUANITA E. PETERSON, Deceased, by his attorneys, Strellis & Field, Chartered, and for Count III of his Complaint against COVENANT CARE MIDWEST, INC., d/b/a CEDAR RIDGE HALTH AND REHAB CENTER, states:

1.    Plaintiff re-alleges paragraphs 1 through 10 of the Count I of Plaintiff's Complaint at Law.

2.    Plaintiff brings this cause of action under the Wrongful Death Act (740 ILCS 180).

3.    The wrongful and neglectful acts described in Count I would have entitled Juanita E. Peterson to maintain an action and recover damages in respect thereof, as detailed above in Count I.

4.    The wrongful statutory violations described in Count I caused the Decedent's untimely death, as her low blood sugar, infection, malnutrition and dehydration, which were directly caused by Defendant's violations of the Nursing Home Care Act, impeded her bodily healing and ability function properly which directly caused her death.

scan 03/22/2013

5.      By reason of the aforementioned violations of the Nursing Home Care

Act, Plaintiff and Decedent's next of kin, have been, has been and will be deprived of the

loss of association.  Further, as a result of the wrongful statutory violations of Defendant,

Plaintiff's decedent incurred medical, funeral, and burial expenses by reason of

Decedent's injuries and resultant death.

WHEREFORE, Plaintiff, LOUIS P. PETERSON, as Executor of the Estate of

JUANITA E. PETERSON, Deceased, prays that this court enter a judgment in his favor

and against the Defendant, COVENANT CARE MIDWEST, INC. d/b/a CEDAR RIDGE

HEALTH AND REHAB CENTER for an amount in excess of $50,000 that will fairly

and justly compensate him for the damages he sustained, plus costs and attorney's fees,

pursuant to 210 ILCS 45/3-602.

### COUNT IV-WRONGFUL DEATH, NEGLIGENCE

NOW COMES Plaintiff, LOUIS P. PETERSON, as Executor of the Estate of

JUANITA E. PETERSON, Deceased, by his attorneys, Strellis & Field, Chartered, and

for Count IV of his Complaint against COVENANT CARE MIDWEST, INC. d/b/a

CEDAR RIDGE HEALTH AND REHAB CENTER, states:

1.      Plaintiff re-alleges paragraphs 1 through 5 of Count II of Complaint at

Law.

2.      Plaintiff brings this cause of action under the Wrongful Death Act (740

ILCS 180).

3.      The wrongful and neglectful acts described in Count II would have

entitled JUANITA E. PETERSON to maintain an action and recover damages in respect

thereof, as detailed above in Count II.

7

4.      The wrongful and neglectful acts described in Count II ultimately caused the Decedent's untimely death, which came about after becoming hypoglycemic, developing infection, malnutrition and dehydration, which were directly caused by Defendant's violations of the Nursing Home Care Act, impeded her bodily healing and ability to function properly which directly caused her death.

5.      By reason of the aforementioned negligent acts as alleged above, Plaintiff and Decedent's next of kin, have been, has been and will be deprived of the loss of association.  Further, as a result of the wrongful statutory violations of Defendant, Plaintiff's decedent incurred medical, funeral, and burial expenses by reason of Decedent's injuries and resultant death.

WHEREFORE, Plaintiff, LOUIS P. PETERSON, as Special Executor of the Estate of JUANITA E. PETERSON, Deceased, prays that this court enter a judgment in his favor and against the Defendant, COVENANT CARE MIDWEST, INC. d/b/a CEDAR RIDGE HEALTH AND REHAB CENTER, for an amount in excess of $50,000 that will fairly and justly compensate him for the damages sustained.

STRELLIS & FIELD, CHARTERED

BY: _____
JACK A. STRELLIS  #2754630
115 East Mill Street
Waterloo, IL  62298
(618) 939-3404
ATTORNEYS FOR THE PLAINTIFF

**PLAINTIFF DEMANDS
TRIAL BY JURY**

scan 03/22/2013

8

STATE OF ILLINOIS    )
                     ) ss
COUNTY OF ST. CLAIR  )

## **A F F I D A V I T**

JACK A. STRELLIS, after first being duly sworn upon his oath, deposes and states that he is the attorney for the plaintiff in the foregoing pleading and that the total of money damages sought in this cause of action exceeds the sum of Fifty Thousand Dollars ($50,000.00).

_____
JACK A. STRELLIS

SUBSCRIBED and SWORN to before me this _____ day of _____
_____, 2013.

OFFICIAL SEAL
LAURA KINZINGER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/12/14

_____
NOTARY PUBLIC

9

# IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

| | |
|---|---|
| LOUIS P. PETERSON, as Executor<br>of the Estate of JUANITA E. PETERSON, Deceased | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   No. 13-L- _149_ |
| | ) |
| COVENANT CARE MIDWEST, INC. doing business | ) |
| as CEDAR RIDGE HEALTH AND REHAB CARE | ) |
| CENTER, | ) |
| | ) |
| **Defendant.** | ) |

**FILED**
ST. CLAIR COUNTY
MAR 2 0 2013
*Nikileh a. Clay*
CIRCUIT CLERK

## AFFIDAVIT IN COMPLIANCE WITH 735 ILCS 5/2-622

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS |
| COUNTY OF ST. CLAIR | ) |

I, JACK A. STRELLIS, having first been duly sworn, state as follows:

1.     In compliance with 735 ILCS 5/2-622, your affiant has consulted and reviewed the facts of the above-mentioned case with a health professional, who your affiant reasonable believes:  (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last six (6) years or teaches or has taught within the last six (6) years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case.

2.     That after a review by said health professional of the medical records and other relevant material involved in the particular action, the reviewing health professional has determined in a written statement, a copy of which is attached

scan 03/22/2013

hereto and incorporated herein by reference, that there is a reasonable and meritorious cause for the filing of such action.

3.    Your affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for the filing of such action against the defendant, Covenant Care Midwest, Inc., doing business as Cedar Ridge Health and Rehab Center.

JACK A. STRELLIS

SUBSCRIBED and SWORN to before me this _____ day of March, 2013.

NOTARY PUBLIC

OFFICIAL SEAL
LAURA KINZINGER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/12/14

Mr. Jack Strellis
Strellis & Field
115 East Mill Street
Waterloo, Illinois 62298

September 24, 2012

Dear Mr. Strellis:

I, Anne Meyer BSN, RN, LNCC, will be called to testify as a retained opinion witness in
the case of Juanita Peterson. I am a registered nurse licensed in Illinois and Iowa to
practice nursing in all of its branches. I have twenty three years of professional nursing
experience and extensive knowledge of the health care system including medical surgical,
critical care, long term care and home health care. I am knowledgeable in the relevant
issues of this case, qualified by experience and training.

Per your request I have reviewed the following documents related to the care of Juanita
Peterson:

1. Medical records from Memorial Hospital
2. Medical records from Cedar Ridge Health Care Center
3. Medical Records from Hillsboro Rehab
4. Medical Records from Dr. Ramos – Pardo
5. Medical Records from Dr. Leopold Pardo
6. Chronology
7. CMS letter dated July 31, 2012
8. CMS letter dated April 25, 2012
9. CMS letter dated October 14, 2011
10. Illinois Public Health Letter dated November 10, 2011
11. Illinois Public Health Letter dated June 22, 2011

Related to the review of the above documents I find the following:

Juanita Peterson was an 85 year old woman who lived with her son; she was independent
with activities of daily living including ambulation, utilizing a cane for longer distances
and able to drive herself to appointments. March 22, 2011 Ms. Peterson was out to lunch
with her son when she tripped and fell, landing on her right buttock. She was
experiencing significant pain and was unable to ambulate. She was taken to Memorial
Hospital and found to have a fractured pelvis and sacrum. Ms. Peterson was admitted for
pain control and therapy. March 27, 2011 Ms. Peterson was discharged to Cedar Ridge
Health Care Center for continued rehabilitation with the plan to return to her son's home
upon discharge.

Juanita Peterson was admitted to Cedar Ridge Health Care Center with the diagnoses of: right pelvic rami fracture, sacral fracture, hip pain, chronic respiratory failure, chronic obstructive pulmonary disease, urinary tract infection, diabetes mellitus, osteoarthritis, osteoporosis and hypertension. Ms. Peterson utilized oxygen at 2 liters per nasal canula continuously at home, which continued at the rehab center related to her chronic pulmonary disease.

Upon admission Ms. Peterson was assessed at 111 pounds and 62 inches tall. She was alert and oriented x 2. She required the assistance of one for bed mobility, transfers, personal hygiene and toilet use. She was unable to ambulate at that time. Physical and Occupational therapy was ordered for Ms. Peterson as she was considered to be at risk for further deterioration in activity tolerance, ADL/ADL mobility unless skilled intervention was provided. The recent hospitalization had resulted in a decline in ability to care for herself and in mobility related to the fractures and pain.

Ms. Peterson had physician orders for numerous medications including glucatrol XL 5mg oral every day and sliding scale insulin for blood sugar control. Her blood sugars were to be monitored before meals and at bed time. As appropriate a care plan was initiated related to the problem of potential for complications secondary to diabetes with a goal for resident labs to be within limits acceptable to the physician. Interventions to be implemented to meet this goal were to assess/record/report to physician any signs or symptoms of hyper or hypoglycemia, provide/serve/monitor diet intake, blood glucose monitoring as ordered, and to administer medications as ordered and monitor for effectiveness and side effects.

March 30, 2011 a physician's order was received to monitor accu checks before meals and at bedtime with sliding scale insulin orders to be given as needed. There were no parameters indicated to notify the physician. April 1, 2011 blood sugar readings were 6 AM = 66, 11AM = 76, 4 PM = 128 and bed time = 61. There is no nursing documentation indicating signs or symptoms of hypoglycemia or that the physician was called. However, there is a new physician's order to hold glucatrol until Monday April 4, 2011, then notify Dr. Shawakin.

April 4, 2011 there is an order for glucatrol XL 2.5mg orally with meals (there is an X through the s in the word meals). There is no nurse signature for the order and no clarification regarding the "s" being crossed out. The order was transcribed (handwritten) onto the medication administration record written the same way. The medication was documented as being given one time daily through the month of April. The May 2011 medication administration record was computer generated and indicated glipizide ER (same as glucatrol XL) 2.5mg 3 x daily with meals. The medication was documented as being given three times on May 1, 2011 and three times on May 2, 2011.

- May 1, 2011 - **no nursing documentation on the Medicare Skilled Documentation Flowsheet to indicate Ms. Peterson's status**
- May 2, 2011 6A - **no blood sugar documented as per MD order**
- May 2, 2011 11A - **no blood sugar documented as per MD order**
- May 2, 2011 11:10A – Nursing documentation - resident is not in distress, accu checks continue.
- May 2, 2011 3:05 PM - accu check 51. Denies signs and symptoms of hypoglycemia, alert and oriented x 3. Glucagon IM 1 mg administered per PRN order for hypoglycemia. **There was no assessment of the resident at this time, physician was not notified of significant change in condition and there was no PRN order written for glucagon**
- May 2, 2011 3:35 PM – blood sugar rechecked with result of 100. Alert and oriented x 3, continues to deny signs or symptoms of hypoglycemia. **No indication of snack given, supper not eaten until 6:15. No recheck of blood sugar until 6:30 PM with symptoms.**
- May 2, 2011 4:00 PM – glipizide 2.5mg given per medication administration record. **This medication should have been held and the physician called regarding the previous blood sugar readings.**
- May 2, 2011 6:30 PM – accu check 51. Patient finished 75% of supper tray at 6:15 PM. Dr. Shawakin paged. Patient complains of blurred vision in right eye. Alert and oriented x 3, no other signs or symptoms of hypoglycemia.
- May 2, 2011 7:00 PM – spoke with Dr. Shawakin regarding blood glucose level. Order received to discontinue glipizide. **No indication that physician was told of 3:05 PM blood glucose level and that glucagon was administered or that resident had received 3 doses of glipizide already that day.**
- May 3, 2011 1:30 AM – Lying in bed lethargic and clammy. Blood sugar 25 mg/dl. Glucagon administered per PRN orders. **No call to 911 regarding emergency situation, no call to MD regarding significant change in condition, glucagon given without physician order.**
- May 3, 2011 1:40 AM – Blood sugar 37. **No call to 911 regarding emergency situation and no call to MD regarding significant change in condition.**

- May 3, 2011 1:50 AM – Blood sugar 48. Sitting up drinking orange juice at bedside table. Will continue to monitor. **No call to 911 regarding emergency situation and no call to MD regarding significant change in condition.**
- May 3, 2011 3:30 AM (late entry May 5, 2011) – This nurse and CNA continuously monitoring resident. Bedside snacks given frequently. Orange juice and diet coke encouraged, cookies and fruit cups fed per this nurse. Alert and oriented. Denies feeling "shaky". No loss of consciousness or clamminess noted. Makes occasional trips to bathroom with one assist. Oxygen continuously as ordered. Will continue to monitor. **No further blood sugar monitoring done during this time, no call to 911 regarding emergency situation and no call to MD regarding significant change in condition. The snacks given were not appropriate for lasting improvement of the blood sugar.**
- May 3, 2011 6:30 AM – Accu check 20mg/dl, snacks given. No increase in accu check. Dr. Shawakin called immediately. New order to send to ER for eval and treat. Med Star ambulance called. Sent to Memorial Hospital. Will monitor.

Ms. Peterson participated in Physical and Occupational Therapy 5 times per week during her stay at Cedar Ridge and made great strides in her rehabilitation process. Physical Therapy reported on May 1, 2011 that Ms. Peterson was able to ambulate 100 feet with a wheeled walker and contact guard assistance. Balance, pain and strength had improved during her admission. Occupational Therapy also reported on May 3, 2011 that Ms. Peterson had gained strength, had appropriate wheelchair posture for extended periods and was able to complete all bathing tasks with only minimal verbal cuing. Social Services also indicated that her cognitive status had improved. At this point she was on the path as planned for rehabilitation and to return to her home.

Ms. Peterson was admitted to Memorial Hospital May 3, 2011 for treatment of severe hypoglycemia. While she was there her overall condition worsened. She was discharged from Memorial Hospital to Hillsboro Rehab Center on May 11, 2011 with new diagnoses of severe hypoglycemia, aspiration pneumonia, dehydration and severe malnutrition. Juanita Peterson continued to decline and died May 15, 2011.

A person such as Juanita Peterson with much co-morbidity is at increased risk for overall decline when confronted with any illness including a hospitalization for severe hypoglycemia. Administering fluids and food to a person with a blood sugar of 20 puts her at increased risk for aspiration and decreased mobility puts her at increased risk for lung infection and blood clots. The workload on the heart and generally the body when fighting an infection, electrolyte imbalance and severe nutrition deficits for a person in this condition can be incapacitating and even lead to death.

Upon completion of my review it is my opinion that within a reasonable degree of medical certainty Cedar Ridge Health Care Center breached the nursing standard of care, was responsible for Juanita Peterson's hospitalization on May 3, 2011 and decline in health leading to her untimely death.

Thank you for the opportunity to review this case.

Sincerely,


Anne Meyer BSN, RN, LNCC

# ANNE M. MEYER, BSN, RN, LNCC, MSCC
2401 23rd Ave. A
Moline, Illinois 61265
Phone: 309-721-6537
Fax: 563-332-5015
Email: anne@MedLawConnection.com

## SUMMARY OF QUALIFICATIONS:

- 23 years of professional nursing experience
- Areas of expertise include: ICU, ER, Long-term care, Medical/Surgical, Cardiology, Home Health Care, and Rehabilitation
- Knowledge of current Standards of Care/Practice
- Extensive knowledge of the health care system
- Perform and Educate on thorough medical case review, analysis and nursing documentation, nursing standards
- Extensive knowledge of CMS (Center for Medicare and Medicaid Services)
- Medicare Set – Aside Allocator
- Billing audits including Medicare
- Excellent organizational and time management skills

## PROFESSIONAL EXPERIENCE

Iowa Health Systems
* Iowa Home Health Care/                                10/06 - present
  Trinity VNHA – Home Health and Clinics Nurse
* Trinity Medical Center – Cardiac/Telemetry Staff Nurse    10/06 - 01/12

Med-Law Connection, Inc. - Owner                          10/05 - present
* Certified Legal Nurse Consultant

Medical Legal Services                                     08/03 - 12/05
* Certified Legal Nurse Consultant

Midwest Therapy Centers
* General Manager for trueBalance Solutions               01/04 - 2/06
* Director of Sales and Marketing

Option Care of the Quad Cities                             08/96 - 01/04
  - Home Health/Home Infusion Company
* Director of Sales and Marketing/Home Care Coordinator
  - including Long Term Care facility services and careplanning
* Director of Nursing
* Intake Coordinator
* Field Nurse

scan 03/22/2013

Olsten Kimberly Quality Care                                    12/93 - 07/96
  - Home Health Care Company
* Supervisor of Clinical Medical Practice

Trinity Medical Center
* Laboratory Assistant (during nursing school)               08/87 - 03/95
* Staff RN/Charge RN – CVU/ICU
* Staff RN -- Medical Surgical Unit

Rock Island County Health Care Center                        01/90 - 04/91
  - Long Term Care Facility
* Director of Nursing

**EDUCATION**

Medipro Seminars & University of Florida                     2005
Medicare Set-Aside Arrangements
Marycrest College, Davenport, Iowa                           1989
  - Bachelor of Science Degree in Nursing

**PROFESSIONAL CERTIFICATION/LICENSURE**

* Licensed Registered Nurse in Illinois and Iowa            1989 – Current
* Certified Legal Nurse Consultant                          8/2003
  Medical-Legal Consulting Institute, Inc.
* Medicare Set-Aside Consultant Certified                   1/2006
  Commission on Health Care Certification
* Legal Nurse Consultant Certified
  American Legal Nurse Consultant Certification Board        3/2010
Accredited by the American Board of Nursing Specialists

**PROFESSIONAL PRESENTATIONS**

Meyer, A. March 2012, "Medical Terminology and Documentation Primer", Anatomy &
Physiology 101 for Attorneys, National Business Institute, Cedar Rapids, Iowa.

Meyer, A. Nov. 2004 & Feb. 2005, "Vestibular Diagnostics Update and Application in
the Rehabilitation Setting", Genesis Medical Center, Davenport, Iowa.

Meyer, A. Jan. 2005, "Eldercare and Community Resources", Quad City Eldercare
Network, Davenport, Iowa.

Meyer, A.  June 2007, "How to Profit by Using a Legal Nurse Consultant",
Professionally Speaking: Attorney Marketing, Management and Networking Conference,
St. Louis, Missouri.

scan 03/22/2013

Kochuyt, A. Nov. 2008, "Nursing Documentation: How To Avoid Legal Implications", Medical Records Law, Cedar Rapids, Iowa.

**PROFESSIONAL ARTICLES**

Kochuyt, A. March 2008, "Nursing Home Litigation on the Rise"

Kochuyt, A. September 2008, "Life Care Plan? Does This Injury Warrant One?"

Kochuyt, A., Kem, J., May 2009, "Pressure Ulcers – An Overview"

Meyer, A., Cepican, M.,  October 2010, "C. difficile Disease in Our Health Care Settings"

Meyer, A., Weitzel, C.,  May 2012,  "Geriatric Medications: Dangerous Side Effects & Adverse Reactions"

**PROFESSIONAL APPOINTMENTS**

American Association of Legal Nurse Consultants Certification Board    5/2011- present
Quad City Eldercare Network Review Chair                    2004 – 1/2011
SR Alliance Board Member   (Service and Respect for seniors)    01/09 – 1/2011

**PROFESSIONAL ORGANIZATIONS**

American Association of Legal Nurse Consultants
American Nurse's Association

scan 03/22/2013

# MASTER RECORD SHEET
## CIRCUIT COURT OF ST. CLAIR COUNTY

| | |
|---|---|
| **Note: Pltf. Atty or Pro Se Pltf. Must Complete Sections 1,2,3,5,&6** Complete 4 if Small Claims Case. Sections 3, 5 & 6 For Office use Only. | **Case Number** _____ 13--L- *149* |
| | **Amount Claimed** _____ $50,000+ plus costs |

**1.**

LOUIS P. PETERSON, as Executor of the Estate of JUANITA E. PETERSON, Deceased,

COVENANT CARE MIDWEST, INC., doing business as CEDAR RIDGE HEALTH AND REHAB CARE CENTER,

**VS**

Plaintiff(s)                                         Defendant(s)

(SEE REVERSE FOR CLASSIFICATIONS AND CODES)

Classification Prefix ___ L ___   Code ___ 01 ___   Nature of Action __Tort Money Damages__ Code __ 1 __

**2.** Pltf. Atty. __JACK A. STRELLIS_____ Code _____
Address __115 East Mill Street_____
City __Waterloo, IL  62298_____ Phone 618/939-3404
Add. Pltf. Atty. _____ Code _____
Is Personal Injury Involved
  ☒ Yes        ☐ No
Does Pltf. Demand A Jury Trial
  ☒ Yes        ☐ No
(THIS DOES NOT CONSTITUTE A JURY DEMAND)

**3.** **TO THE SHERIFF: SERVE THIS DEFENDANT AT:**
NAME  COVENANT CARE MIDWEST, INC., doing business as CEDAR RIDGE HEALTH AND REHAB CENTER, c/o CT CORPORATION
ADDRESS SYSTEM, Registered Agent
208 S. LaSalle Street, Ste 814
CITY & STATE
Chicago, IL  60604

**4.** ☐ CHECK FOR SMALL CLAIMS SUMMONS    **Complete This Section For Small Claims**
Please Set This Case For _____ at _____ M. On _____ 20___
                                      Court Location

**5.**
A. Is an insurance carrier involved?    ☐ Yes    ☒ No

B. If yes please give company name: _____

**6.**
A. Is there a minor involved?    ☐ Yes    ☒ No

B. If yes, will the appointment of a guardian Ad Litem be necessary    ☐ Yes    ☐ No

FILED
ST. CLAIR COUNTY
MAR 20 2013
*Halah a. Clay*
CIRCUIT CLERK

# SEE REVERSE FOR
# CASE CLASSIFICATIONS AND CODES

SCAN 03/22/2013

**ST CLAIR COUNTY**
**TWENTIETH CIRCUIT COURT, KAHALAH A. DIXON**

RECEIPT #: C    000324087              DATE: 03-20-2013              TIME: 09:40:53
RECEIVED OF: STRELLIS JACK                                           MEMO:
PART. ID: 681
BY CLERK: gt
CHECKS: A    24795                      $458.50

| CASH | CREDIT | CHANGE | OTHER |
|------|--------|--------|-------|
| $0.00 | $0.00 | $0.00 | $0.00 |

| CASE NUMBER | EVENT | COURT/JUDGE | TAX NO. | AMOUNT |
|-------------|-------|-------------|---------|--------|
| 13-L-0149<br>PETERSON VS COVENANT CARE<br>PARTY: STRELLIS JACK | 2023 | PMT:CFIL COMPLAINT FILING FEE | | $246.00 |
| 13-L-0149<br>PETERSON VS COVENANT CARE<br>PARTY: STRELLIS JACK | 2031 | PMT:CJUR12 12 PERSON JURY FEE | | $212.50 |
| | | TOTAL RECEIPT... | | $458.50 |

*   CHECK/CHEQUE IS CONDITIONAL PAYMENT
* PENDING RECEIPT OF FUNDS FROM BANK. *